## THE OVERSEERS OF ALEXANDRIA vs. THE OVERSEERS OF BETHLEHEM.

1. A warrant of distress cannot be issued against an overseer of the poor under the 8th section of the "act for the settlement and relief of the poor," (*Nix. Dig.*, 609,) unless such overseer has notice of the application for the warrant and an opportunity to be heard.

2. If a warrant of distress is issued against two overseers, and only one of them has been served with notice, the warrant will be set aside.

3. Before proceedings can be had to enforce the penalty against the overseers by warrant of distress the legal settlement of the pauper must be determined, and the order of removal, or a copy thereof, must be served on the overseer of the township to which the pauper belongs.

*Certiorari* to set aside a warrant of distress issued by two justices of the peace against two overseers of the poor.

Argued before Justices OGDEN, VREDENBURGH, and VAN DYKE.

The opinion of the court was delivered by

OGDEN, J. The *certiorari* removed into this court for review the proceedings of William Egbert and Sylvester H. Smith, two justices of the peace in the county of Hunterdon, and the warrant of distress awarded and issued by them against Joseph Pickle and Peter Cole, overseers of the poor of the township of Alexandria, in the county of Hunterdon.

The plaintiffs in this court have charged that the adjudication of the two justices was illegal, because no notice was given to Peter Cole, one of the two overseers of Alexandria, of the time and place and of the justices before whom the application for a warrant would be made.

The whole proceeding was had under the 8th section of the act for the settlement and relief of the poor. The section contemplates cases where persons legally settled in, a township remove out of it into another township, and then happen to be sick or otherwise incapable of being removed back, and needing public assistance. It authorizes the overseers of that township, or one of them, to give notice to the overseers, or one of them, of the township out of which the persons shall come, of the condition of such persons, and to request such overseers, or one of them, to take care to relieve such persons during their illness; and it provides that if such overseer or overseers shall neglect or refuse so to do, upon such notice given as aforesaid, that it shall be lawful for any two justices of the peace of the county to cause all such sum or sums of money as shall be necessarily expended in the maintenance of such persons, by warrants under their hands and seals, to be levied by distress and sale of the goods and chattels of the individual overseer or overseers so neglecting or refusing to provide for such persons, after such notice given to them, or to one of them, as aforesaid, and it directs that the surplus of the money arising from the sale (if any there be) shall be paid to the owners thereof.

From the return made by the two justices, it appears that on application made to them by the overseers of the poor of the township of Bethlehem, setting forth that John Mutterman and his wife and child, who were legally settled in the township of Alexandria, had come into the township of Bethlehem, and, on account of sickness, were unable to return or be removed back; and wanting immediate assistance, of all which, it was alleged, *due notice* had been given to the overseers of the poor of the town

ship of Alexandria, who neglected and refused to furnish the necessary assistance; and that the overseers of Bethlehem were compelled to expend large sums of money in furnishing the necessary relief, for which they asked for a warrant of distress, to levy the same of the respective goods of the overseers of the township of Alexandria : whereupon they, the justices, issued a notice, under their hands and seals, directed to the overseers of the poor of the township of Alexandria, informing them of the complaint, and appointing a time and place of hearing, adjudicating, and determining the matters in relation thereto.

It is stated in the return, that on the day fixed upon in the notice, they convened at the place designated, and received *due proof to their satisfaction* of the *due* and *legal* service of the notice upon the overseers of Alexandria, and then proceeded to hear the proofs and allegations of the parties. A rule of this court was granted for taking affidavits, and the witness who proved the service of the notice was examined before a commissioner. He testified that he was one of the overseers of the poor of the township of Bethlehem ; that Peter Cole was not present at the hearing, and that he did not think that any notice of the hearing was served on him; that he thought he served all the notices for that hearing, and that he testified before the justices that no notice had been served on Peter Cole for that hearing, and also that no notice had been served on him to produce a copy of the order of removal. It is shown that the proof, which the justices deemed *sufficient*, was proof of a service of the notice upon Mr. Pickle, one of the overseers, who appeared and resisted the awarding of the warrant; and thus the question is plainly presented, whether, in a proceeding of this nature, service of a notice upon one overseer will warrant an adjudication against both.

The personal liability given by the statute is in the nature of a penalty, and the principle is too plain to require illustration, that no penalty can be imposed upon a per-

son without previous notice.  Our law condemns no man un-
heard, or at least without his having an opportunity of being
heard.

The award of the warrant of distress was against both the
overseers, for the sum of $65, moneys expended by Bethle-
hem, and for costs of the proceedings, to be levied out of the
proper goods and chattels of either of them.

It likewise appears in the proceedings that the notice that
the paupers were in the township of Bethlehem was served
only on Peter Cole.   The case stands thus:

The notice calling for the action of the overseers of
Alexandria was served on one overseer, the notice of an
application to two justices for the enforcement of the pen-
alty for negligence was served on another overseer, who only
appeared, and the award of a distress warrant was against
both.

The proceedings clearly are irregular, and radically defec-
tive against Mr. Cole; nor are they valid against Mr. Pickle,
because the adjudication of the justices being against both
overseers, it must be good in whole or bad in whole.   The
warrant must be set aside on this ground.

Another point was taken on the argument, which is equally
fatal.

It does not appear that an order of removal had been
made before the notice to the overseers was served upon
Mr. Cole, or before the application for a warrant was pre-
sented to the two justices, or that any such order, or copy
thereof, was ever served upon either of the overseers of
Alexandria.   It was not the province of these justices to
adjudicate upon the legal settlement, and it is apparent,
in the return to the *certiorari*, that they had no written
proof before them that the legal settlement of John Mut-
terman and his family had ever been adjudicated upon
or that knowledge of any settlement had been carried
home to either of the overseers of Alexandria.   On the
contrary, the affidavit of Mr. Pickle, one of the plaintiffs
in *certiorari*, the overseer of Alexandria, upon whom the

notice to show cause was served, showed that he had no knowledge of any adjudication whereby the legal settlement of the poor persons had been determined to be in Alexandria.

A party seeking to enforce a penalty, or to recover money in the nature of a penalty, ought to show a case clearly and distinctly within the provisions of the statute on which the proceedings are founded.

The two justices should have required proof that the poor persons had been adjudged to belong to Alexandria, and that the notices prescribed in the statute had been given before they issued their notice for the overseers of Alexandria to show cause. In the language of Chief Justice Hornblower, in the case of *Newton* v. *Hardiston*, in 2 *Green* 517, " before an overseer can know to what other overseer notice to relieve ought to be given, the *last* legal settlement of the pauper must be ascertained. The legal residence of the pauper must first be judicially determined, and an order of removal be regularly made out." " Such order, or a copy of it, together with the notice required by the act, should be served by the overseer where the pauper is, upon the overseer of the place where his settlement has been adjudged to be."

It is not requisite, in disposing of this case, that we should examine the question of the effect which the annexation of a portion of Alexandria to Bethlehem had upon a settlement alleged to have been acquired in Alexandria before the division.

The warrant of distress, and all proceedings under it, must be set aside. for the reasons which have been given.